WALTER STEINHARDT,

                Plaintiff,

v.                                                           Case No. 24-cv-1403-pp

KATHY SABLE, *et al.*,

                Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

Plaintiff Walter Steinhardt, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The plaintiff has paid the full filing fee. This decision screens his complaint, dkt. no. 1.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

1

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

### B. The Plaintiff's Allegations

The plaintiff sues Kathy Sable, the X-Building program supervisor at Oshkosh Correctional Institution; former Oshkosh Warden Cheryl Eplett; and Oshkosh Warden Brian Cahak. Dkt. No. 1 at ¶¶2-4. The plaintiff alleges that Oshkosh has about twelve housing units, one of which is a barracks identified as "X-Building." Dkt. No. 1 at ¶5. He states that the X-Building is for veterans and incarcerated individuals with good conduct. Id. On that unit, individuals "are provided opportunities, rights, and privileges that the rest of the prison population is not entitled to, even if they have perfect conduct or a veteran status." Id. The plaintiff asserts that all incarcerated individuals at Oshkosh "are *similarly situated* individuals in medium custody, yet being treated differently." Id.

The plaintiff states that he is retired veteran of the United States Navy who served over twenty years and received an honorable discharge. Id. He allegedly was an occupant of the veteran unit, "prior to his removal due to Defendant Sable permitting inmates to *vote* to remove people they didn't like." Id. The plaintiff alleges that he has service-related PTSD triggered by open living spaces; he says that he requested an accommodation but was denied. Id. He asserts that similarly situated incarcerated individuals should not be treated better or worse than anyone else in the same facility; he says that he means by this that individuals in X-Building "should not be receiving an exponential amount of privileges, freedoms, rights and treatment that the rest of the population does not." Id.

3

The plaintiff alleges that on July 23, 2023, he wrote a letter to the warden and the X-Building supervisor (both are defendants) in which he expressed "concerns about treating incarcerated individuals differently, his PTSD issues and his desire to be sent to another facility with a Veteran based program." Id. at ¶6. On August 9, 2024, Warden Cahak responded to his letter and advised him to write to defendant Sable. Id. at ¶7. About a week later, the plaintiff allegedly filed an inmate complaint in which he complained about the "ongoing equal protection violations due to the defendant's treating similarly situated inmates differently than the rest of the general population." Id. at ¶8. The plaintiff states that his complaint was rejected as untimely. Id. at ¶9. The plaintiff says that he appealed, but that Cahak allegedly dismissed the appeal. Id. at ¶¶10-11.

The plaintiff says that X-Building incarcerated individuals "are permitted to be outdoors all day; They have recliner type chairs, special movies, game systems, unit garden, special fundraisers, 70" TV's, microwaves, special canteen, the ability to take photos on the unit, and many other privileges that no other inmates at [Oshkosh] are allowed, despite being similarly situated." Id. at ¶16.

The plaintiff claims that defendant Sable "permits herself and her unit staff to implement practices that allow inmates on her building to live luxuriously, being permitted rights and privileges that no other inmates in the prison are allowed." Id. at ¶13. He claims that Sable violated his rights under the Fourteenth Amendment because all individuals at Oshkosh are similarly

4

situated. Id. The plaintiff claims that defendant Eplett, who retired as warden after the plaintiff wrote his letter, facilitated and approved the veteran unit at Oshkosh. Id. at ¶14. He claims that Eplett allowed staff to "create practices that permitted treating similarly situated inmates better than those on other units," in violation of the Fourteenth Amendment. Id. The plaintiff claims that Cahak "refused to take any action to cease the unconstitutional practices permitting defendant Sable to allow her unit inmates to be treated better than all other similarly situated inmates." Id. at ¶15.

For relief, the plaintiff seeks monetary damages and an injunction against Oshkosh to cease the practices/operations that allow an entire unit to be treated differently than 1,900 other incarcerated individuals. Id. at 5.

C. Analysis

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Prison officials may treat incarcerated individuals differently if "the unequal treatment is rationally related to a legitimate penological interest," except when the disparate treatment is "based on a suspect class," in which case heightened scrutiny applies. Flynn v. Thatcher, 819 F.3d 990, 991 (7th Cir. 2016); see also City of Cleburne, 473 U.S. 432, 439-42 (1985). The plaintiff has not alleged that prison officials discriminated against him based on a protected classification, so he must allege facts plausibly suggesting that the officials treated him

5

differently than others similarly situated, and that the treatment was not rationally related to a legitimate interest. Flynn, 819 F.3d at 991.

The plaintiff alleges that all incarcerated individuals at Oshkosh are similarly situated and that housing some of them in the X-Building (with all its alleged privileges and amenities) violates his right to equal protection. The plaintiff says that the unit is for veterans and individuals with good conduct and that he is a veteran with good conduct, so he should be on the unit. He alleges that he previously was housed in the X-Building unit but that when Sable allowed incarcerated individuals vote to remove people they didn't like, he was removed from the unit. It is not clear whether the plaintiff means that all the 1,900+ incarcerated individuals at Oshkosh are, like him, veterans with good conduct; that seems unlikely. But there are "obvious reasons to extend preferential treatment" to incarcerated individuals in a particular housing unit. See Flynn, 819 F.3d at 991. "Conferring benefits to those with a history of good behavior encourages rehabilitation, institutional security, and the safety of inmates, staff, and visitors." Id. (citing McGinnis v. Royster, 410 U.S. 263, 270-73 (1973)); see also Singer v. Raemisch, 593 F.3d 529, 535-36 (7th Cir. 2010).

Although the plaintiff believes that allowing incarcerated individuals to vote on who may remain in the X-Building is unfair, the plaintiff has not alleged that any *defendant* singled *him* out for different treatment. The plaintiff has not alleged intentional or deliberate discrimination against *him*. That means that he has not stated an equal protection claim. See Flynn, 819 F.3d at 991-92.

6

Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022); Runnion *ex rel.* Runnion v Girl Scourts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519-20 (7th Cir. 2015); Perez v. Fenoglio, 792 F3.d 768, 783 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of the facts surrounding his claim, so the court finds that further amendment would be futile. Because the plaintiff has not stated a claim for which this federal court may grant relief, the court must dismiss his complaint.

### III. Conclusion

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks

to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 3st day of March, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**